THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MIGUEL MUÑOZ GUZMÁN, Defendant and Appellant.

No. 12503. Argued December 3, 1947.—Decided February 10, 1948.

*Samuel R. Quiñones* for appellant.   *Luis Negrón Fernández, Attorney General, J. Rivera Barreras, Prosecuting Attorney,* and *Alberto Picó Santiago, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Marrero delivered the opinion of the Court.

The information filed, in the District Court of Bayamón, against the appellant herein, Miguel Muñoz Guzmán, alleges in substance that during the night of one of the last days of the month of August, 1943, in the Ward of Sabana, Guaynabo, the above-named defendant unlawfully, wilfully, criminally, and

by means of force and violence had sexual intercourse with Iris Martínez Conde, without her consent, who then and there was not the wife of the defendant, and who in addition was under the age of 14 years. Upon the corresponding trial being held, the jury brought in a verdict of guilty. The defendant thereupon filed a motion for a new trial and, after it was denied, the court sentenced him to a term of from one to five years in the penitentiary at hard labor. The defendant has appealed both from the judgment of conviction and from the order denying his motion for a new trial, and in the brief filed in support of his appeal, he assigns four errors, which will be discussed in the same order in which they appear therein.

He first contends that the "court erred with great prejudice to the defendant in admitting as part of the *res gestae* the testimony of the mother of the prosecutrix." It appears from the record that at the time the facts charged against the appellant occurred, Iris Martínez Conde, the injured person, was a little over 13 years two months of age; that she was the sister-in-law of the defendant Miguel Muñoz Guzmán, the latter having married her sister, María Eduvigis; that while a small child of the defendant was seriously ill, the mother of Iris told the latter on a certain afternoon to go to the house of María Eduvigis, who had been unable to sleep for several nights due to the illness of the child; that Iris obeyed and went to the house of her sister at nightfall where, upon her arrival, she ironed some clothes; that at about ten o'clock at night she fried some pork chops for the defendant and afterwards lay down in bed in a small room adjoining the kitchen; that while Iris was asleep, with her clothes on, the defendant climbed her bed in his underwear, and when she awakened he covered up her mouth with a sheet and warned her that if she told anything he would kill her; that she offered resistance, but that Muñoz overpowered her, raised her skirt, pulled her panties down, and had sexual inter-

course with her; that on the following morning Iris got up early, burned her bed sheet, which was stained with blood, in the yard and went to the house of her mother before her sister María Eduvigis got up; that upon reaching her mother's house, Iris did not say anything to her for fear of the threats made to her by the defendant, and that afterward, when the mother noticed that Iris's panties were stained with blood, she questioned Iris, who answered that she could not account for those stains, and the mother attributed them to the beginning of the menstruation of the girl; that subsequently the mother took the child to see Dr. Biascochea, and the latter, without making a vaginal examination, advised her to take some pills to increase the hemoglobin, and that it was on or about June 4, 1944, when the wife of the defendant visited Iris' mother and after separating from Muñoz, that Iris told the mother what the defendant had done to her.

The evidence for the prosecution also shows that subsequent to the rape charged, the defendant visited the house of Iris' parents almost weekly and that whenever he saw her he would look at her intently as if threatening her, and upon speaking to her he stated to her that if she told what had happened he would kill her and her parents; and that due to that threat she kept silent until the defendant did the same thing to a cousin of hers, named Carmen Delia Reyes, and seeing that the latter had told "everything" and the defendant had not done anything to her, Iris decided to tell what had happened.

The question to be determined is, therefore, whether or not what was told by Iris Martínez Conde to her mother more than 9 months after the rape occurred should have been admitted in evidence by the lower court. In our judgment, the district court acted correctly in admitting the testimony of the mother, Enriqueta Conde Martínez, on this particular. It is true that on the morning following the occurrence, when she asked her daughter about the blood stains on the panties, the

daughter kept silent, and that it was only after several months had elapsed that Iris told what the defendant had done. Nevertheless, her silence is explained by the fact that the defendant not only threatened her the night on which the crime was committed but also weekly, and that the child, fearing that those threats would be carried out, chose to keep silent.

As has been stated on numerous occasions, in order that the statements of the injured person in a case of rape be admissible in evidence, it is not necessary that the same should have been made coetaneously or contemporaneously with the occurrence. The element of time is not decisive. What is really important is that the statements be spontaneous. In this connection, in *People* v. *Fuentes,* 63 P.R.R. 42, we stated, at page 46, that the application of the rule "with more or less rigidity depends on the special circumstances of each case. When, as in the case at bar, the prosecutrix is a girl of only thirteen years of age, legally incapable of consenting to the carnal act realized upon her person, and her silence during the following five days is the direct consequence of the fear awakened in her mind by the threats of the perpetrator of the outrage, the statement made by her to her mother when the latter, upon discovering the stains of blood, knew that something abnormal had occurred to the girl, is legally admissible." In the instant case, the period of time elapsed is not so short as it was in the *Fuentes* case. On the contrary, it is much longer, but taking into consideration that here, as in that case, there is involved a child of tender age and that defendant threatened her not only at the time of committing the act but also every week, and that it could be said that she was all that time under the controlling influence of the defendant, her prolonged silence was clearly explained and the lapse of time under those circumstances should not be an obstacle for the application in the present case of the rule which allows said statements to be admitted in evidence. Indeed, this principle has been amply discussed by us in so many cases that we deem

it unnecessary to make any further comments on it. It will be sufficient to cite some of those cases, to wit: *People v. González*, 66 P.R.R. 193; *People v. Fuentes, supra; People v. Alvarez*, 47 P.R.R. 152; *People v. Blanco*, 40 P.R.R. 122; and *People v. Arenas*, 39 P.R.R. 14. See also Wigmore on Evidence, vol. VI, 3d ed., § 1750, p. 142, and 44 Am. Jur., § 86, p. 956. Moreover, the admission in evidence of testimony of this kind rests in the sound discretion of the trial judge, and we will interfere only when we are convinced that there has been a clear abuse of discretion. The record of the instant case does not show such an abuse. *People v. Calventy*, 34 P.R.R. 514; *People v. González, supra*. Therefore, the first error assigned is nonexistent.

The appellant next contends that the lower court "committed error with great prejudice to the defendant in not ordering a mistrial on motion of the defendant when the district attorney tried to introduce evidence foreign to the case and prejudicial to the defendant." In order that a clear picture of the situation may be had, we copy below the incidents which gave rise to this assignment. While the prosecutrix Iris Martínez Conde was testifying, the district attorney asked her: "Did you tell it to your mother at any time?" She answered: "After 8 months. I told her, because we learned of another case in which he did it with a cousin of mine." The judge who presided at the trial immediately, and on his own initiative, stated: The court orders the striking out of the answer of the witness which refers to what was learned of the other case and instructs the gentlemen of the jury that they should not take into consideration in any way the answer of the witness in connection with the other case; that the only evidence that the gentlemen of the jury should take into consideration is the evidence which refers solely and exclusively to this case." The defense then moved the court to dissolve the jury and to order a mistrial. The court denied the motion and the defendant took excep-

tion. (Transcript of Evidence, p. 69.) Immediately thereafter, while the district attorney continued with the direct examination of the minor Iris Martínez Conde, there arose the incident which we copy verbatim below:

"Q. Do you remember the date on which you told your mother what happened to you in connection with Miguel Muñoz Guzmán?

"A. Yes, sir. I do not remember the exact day but it was in June 1944.

"Q. Then, child, if what happened to you with Miguel Muñoz Guzmán was in August 1943, do you know how to count the months?

"A. Yes, sir.

"Q. Let us see if you can count from August 1943, up to June 1944. You said eight months.

"A. It is ten months. I was referring to the other case, occurring eight months before.

"Q. And what is that other case?

"A. Another rape which he committed on a cousin of mine.

"DEFENSE: We again move the court to dissolve the jury.

"THE COURT: The court orders the striking out of the answer of the witness and instructs the gentlemen of the jury that they should not take into consideration any statement regarding any other case; that the evidence that you should take into consideration is the evidence that refers to this case, solely and exclusively that of this case, in which the defendant is charged with having raped this girl named Iris Martínez Conde.

"DEFENSE: We ask the court that a ruling be made regarding the mistrial.

"THE COURT: Denied.

"DEFENSE: We again take exception.

"DISTRICT ATTORNEY:

"Q. Child, do not talk about those things which you have mentioned." (Tr. Ev. 69, 71).

Subsequently, on cross-examination, the following incident occurred:

"Q. Why did you not tell your mother when on the following day of the occurrence she asked you, and after eight months had elapsed you told her?

"A. Because my sister had already gone to my home, and he had separated from her.

"Q. You·did not have then the same fear as before?

"A. Since he did the same thing to a cousin of mine and she told it, then I also told it.

"Q. And then you told it to your mother?

"A. Yes, sir." (Tr. Ev. 104, 105.)

The defense did not request anything from the court; nor did it object on this occasion to the statements of the prosecutrix, despite the fact that she repeated what she had previously stated.

The trial went on, and after all the evidence for the prosecution had been introduced, the defendant himself took the witness stand. On cross-examination, the district attorney asked him: "Who raped Iris Martínez Conde?"—and the defendant answered: "A brother of hers . . . Her brother is named Expedito Martínez. . . I saw it and my wife also saw it." Upon the district attorney again asking the defendant "Were you not the one who raped her?," he answered— "I was not." Then the following incident appears from the record:

"Q. Who raped Carmen Delia Reyes?

"A. (He does not answer.)

"DEFENSE: Your Honor, we again move for a mistrial and for the dissolution of the jury. It is the third time during the course of the trial that the district attorney has insisted in bringing herein, to this case, evidence foreign to it and prejudicial to the defendant.

"THE COURT: The court sustains the objection and instructs the gentlemen of the jury that they should not take into consideration said statements but solely and exclusively the evidence which refers to this case."

The defendant did not take any exception to the foregoing ruling of the court. The cross-examination continued thus:

"DISTRICT ATTORNEY:

"Q. Witness, in 1943 who lived in your house?

"A. My wife, myself, and two children of mine.

"Q. And who else lived in your house in August 1943?

"A. Nobody else.

"Q. Nobody else stayed to sleep there in your house?

"A. Nobody else.

"Q. Do you know Carmen Delia Reyes?

"A. Yes, sir.

"Q. Do you know if that person that I have named went to live in your house at that time or on a previous date?

"A. Carmen Delia Reyes lived in my house twenty-six days.

"Q. Did she live there?

"A. She, Carmen Delia Reyes, lived in my house for twenty-six days." (Tr. Ev. 178–179.)

The defendant did not make any objection to the foregoing cross-examination.

Nor did the defendant on this occasion request anything from the court or take exception to the ruling made by it.

Afterwards, when the trial was in its last stages, there occurred the following:

"A Juror: Do we not have to take into consideration in any way, in passing upon this case now before us, any statement which has been made in connection with other cases which the defendant may have pending?

"The Court: Absolutely not. I told you so. You are judging the defendant for a supposed crime of rape on the person of Iris Martínez Conde. There has been no evidence here, nor has there been any attempt to introduce evidence, that the defendant has committed other crimes, and the defendant is presumed innocent until the contrary is proven." (Tr. Ev. 190, 191.)

On this occasion the defendant did not ask anything of the court or take any exception to its ruling, either.

Furthermore, the record patently shows that the defendant himself was the one who, for the first time and in the presence of the jury, made reference to two cases of rape instituted against him. Upon the present case being called for trial, he insisted that it be continued because his witness, Dr. Biascoechea, was not present in the courtroom. The court thereupon asked him what was this witness to testify, and then the following incident occurred:

"DEFENSE: Generally, in general terms, regarding the examination which the doctor made to the injured persons in these cases and regarding a certain treatment of a gonococcic nature, for gonorrhea.

"DISTRICT ATTORNEY: In which of the two cases, may we ask our colleague?

"DEFENSE: In both cases. We are speaking of the two cases which are set for today.

"DISTRICT ATTORNEY: If your Honor please, to call attention to the fact that the doctor could not testify as to that particular, because privileged communications from the patient are involved.

"DEFENSE: It is regarding that particular, your Honor, that Dr. Biascoechea would testify. Besides, we need the clinical record in which the visits of said persons to the clinic are set forth and the time during which they were under treatment there. That is very essential for the defense . . ."

A reading of the foregoing excerpts shows that it was the defendant himself who first spoke before the jury about the two prosecutions for rape being instituted against him; and that immediately after reference was made by the witness Iris Martínez Conde or by the defendant of what happened with Carmen Delia Reyes, the court advised the jury that the defendant was being prosecuted for the supposed rape of Iris Martínez Conde, that the defendant was presumed to be innocent until the contrary was proven, and that it should not take into consideration in any way any statements made regarding any other case. In acting as it did, the lower court did not commit any error. We could properly repeat now what we said in the case of *People* v. *Carreras*, 62 P.R.R. 148, 152, thus:

" . . . On the whole, we conclude, from the circumstances of this particular case, that the prompt and salutary action of the court cured the improper conduct of the district attorney, and that the defendant was not sufficiently prejudiced thereby to require us to reverse the conviction herein for this reason alone."

See also on this point the case of *People* v. *Ojeda*, 66 P.R.R. 399, 401.

■ The third assignment of error is that the lower court erred "in rendering judgment relying on a verdict which was not supported by the evidence and was not in accord with the law." In cases tried before a jury, the latter are judges of the facts and we should not interfere with their weighing of the evidence, unless we are convinced that their findings are entirely erroneous or that they have acted under the influence of passion, prejudice, or partiality. The evidence for the prosecution tended to show that the defendant raped Iris Martínez Conde, while that for the defense was to the effect that a personal revenge by Iris's mother was involved, due to her considering the defendant socially inferior to her daughter María Eduvigis, her hatred for him having reached such a point that she succeeded in separating him from María Eduvigis. The jury, however, resolved the conflict in the evidence, and an examination of the latter convinces us that their verdict is supported by the evidence introduced in the course of the trial. See *People v. Rivera,* 67 P.R.R. 179, 186; *People v. Millán,* 66 P.R.R. 233, 248, and cases therein cited.

■ In his argument under the third assignment, the defendant also urges that the testimony of the prosecutrix was not corroborated as required by § 250 of the Code of Criminal Procedure.[1] We do not agree. We have here not only the testimony of the injured minor, Iris Martínez Conde, but also the testimony of her mother to the effect that she sent Iris to defendant's house to take care of one of his children on the night of the occurrence; the testimony of the mother regarding her having seen Iris's bloodstained panties on the following morning; and, lastly, the statements of the mother in connection with what Iris told her 9 months afterwards. All this, in our judgment, constitutes sufficient corroboration.

---

[1] "Section 250.—Upon a trial for procuring . . . rape, the defendant can not be convicted upon the testimony of the woman upon or with whom the offense was committed, unless her testimony is corroborated by other evidence."

*People* v. *Nieves,* 48 P.R.R. 149, *People* v. *Vázquez,* 40 P.R.R. 245, and *People* v. *Munera,* 39 P.R.R. 267.

Regarding the fourth assignment it is almost unnecessary to make any comments. In this assignment it is contended that the "court erred, with great prejudice to the defendant, in denying the motion for a new trial." Said motion was based on the same grounds which have been assigned as errors in support of this appeal. In discussing said assignment, the appellant merely states that he relies on the same grounds advanced for the preceding assignments. Since those assignments have already been discussed at length by us and decided adversely to the defendant, the said assignment should likewise be dismissed.

Since the lower court did not commit any of the errors assigned, its judgment should be affirmed.